# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                              No. 12-CR-02222-WJ/KRS

ANTONIO GUTIERREZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE AND FPD'S MOTION TO EXTEND TIME

**THIS MATTER** is before the Court on Defendant Antonio Gutierrez's *pro se* second motion for compassionate release, filed September 30, 2020 (**Doc. 208**) and amended on October 9, 2020 (**Doc. 209**), and the Federal Public Defender's ("FPD") motion for extension of time, filed October 13, 2020 (**Doc. 210**). The Court, having reviewed these motions, the Government's response[1] (Doc. 211)**,** and the applicable law, finds the motions listed above are not well-taken. Therefore, the Court DENIES Defendant's motion for compassionate release and DENIES the FPD's motion for extension of time.

## BACKGROUND

In 2014, Defendant was found guilty of production of a visual depiction of a minor engaged in sexually explicit conduct and was sentenced to 360 months imprisonment. Doc. 166 at 1–2. Defendant, a 50-year-old inmate at FCI Big Springs, a facility operated by the Federal Bureau of Prisons ("BOP"), first filed a motion for compassionate release on August 24, 2020. Doc. 204. The Court denied this motion because Defendant failed to allege or even assert that he had exhausted

---

[1] The Government moved the Court to seal its response because exhibit attachments contain private medical information about Defendant (Doc. 212). The Court granted the Government's motion to seal (Doc. 213).

his administrative remedies. Doc. 207.

On September 30, 2020, Defendant filed a second motion for compassionate release, citing to the same concerns found in his first motion and requesting the same relief. Doc. 208. Defendant then amended his motion to include, among other things, an assertion that he had exhausted his administrative remedies. Doc. 209. The motion asks for a reduction in his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the First Steps Act of 2018, Pub. L. 115-391, 132 Stat. 5194 and requests that the Court order home confinement with his disabled parents. *Id.* at 17. On October 13, 2020, the Federal Public Defender ("FPD") requested an additions 45 days to evaluate the viability of Defendant's motion. *See* Doc. 210.

## DISCUSSION

### I.      Defendant's Motion for Compassionate Release

"Generally, a federal court may not modify a term of imprisonment once imposed." *United States v. Wilson*, 493 F. App'x 919, 921 (10th Cir. 2012) (citing *Dillon v. United States*, 130 S. Ct. 2683, 2687 (2010)).  However, Congress has provided a limited exception to this general rule and allowed for certain "compassionate release" sentence modifications under 18 U.S.C. § 3582(c)(1)(A). To justify the type compassionate release that Defendant seeks, the Court must find that "extraordinary and compelling reasons warrant such a reduction." *Id.* That said, a district court may not consider a request for compassionate release unless and until the prisoner has exhausted all administrative remedies. *See* § 3582(c)(1); *see also United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2020 WL 1888856, at *3 (D. Kan. Apr. 16, 2020) (discussing administrative exhaustion as a jurisdictional requirement). As the movant, Defendant bears the burden to establish that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

A.  <u>Defendant's Assertion that He Met the Exhaustion Requirement is not Dispositive</u>

Defendant asserts he made a request to the warden of his facility for compassionate release and home confinement. Doc. 209.  The motion contains two different dates for this alleged request: August 8, 2020 and August 14, 2020. *Id.* at 5, 7.  Defendant alleges that his request was denied on September 9, 2020.[2] *Id.* at 7. If Defendant's assertions are true, he is eligible to make his own motion for a reduction in his sentence. § 3582(c)(1)(A). Defendant offers no paperwork or other evidence to support a finding of exhaustion. Notwithstanding the lack of evidence, the Court gives Defendant the benefit of the doubt here on the exhaustion issue. However, this does not end the inquiry. If the exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).  The Sentencing Commission's relevant policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that:

(i) "extraordinary and compelling reasons warrant the reduction;"

(ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and

(iii) "the reduction is consistent with this policy statement."

USSG § 1B1.13. Applying this standard, the Court concludes that it must deny Defendant's motion for the reasons discussed below.

B.  <u>Extraordinary and Compelling Reasons Do Not Exist</u>

---

[2] The Government contacted the BOP to verify this information, but as of October 14, 2020 had not yet received a reply (Doc. 211 at 6).

Even liberally construed liberally, as *pro se* pleadings must be, there is nothing in Defendant's motion that would allow the Court to find "extraordinary and compelling reasons" warranting a reduction in sentence. The "extraordinary and compelling reasons" standard may be met based on a defendant's medical condition, which in relevant part, can include the following categories:[3]

(1) a defendant who is "suffering from a terminal illness";

(2) a defendant who is suffering from a serious physical or medical condition;

(3) a defendant who is suffering from a serious functional or cognitive impairment; or

(4) a defendant who is experiencing deteriorating physical or mental health because of the aging process;

. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

If a defendant's medical condition does not fall within one of the categories, the Court must deny his motion. Defendant again cites to HPV–Herpes Virus II and immunodeficiency stemming therefrom, spinal stenosis, sciatica, herniated vertebral disks, neuropathy, arthritis, anxiety, Post-Traumatic Stress Disorder, depression, opiate addiction and general health deterioration and necessary surgeries resulting from his age, as well as the relation of these health conditions with the ongoing COVID-19 pandemic as grounds for his request. Doc. 209.

Defendant asserts that the COVID-19 pandemic in itself constitutes an "extraordinary and compelling reason" for compassionate release. *Id.* at 9–13. The Court cannot give credence to this broad assertion, as it goes against the Sentencing Commission's definition of the term "extraordinary and compelling reasons." The Court agrees with the Third Circuit that the mere

---

[3] *See* USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances which are not pertinent here. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone can independently justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Court is not unsympathetic to Defendant's health conditions, nor ignorant of the fact that the coronavirus has struck the prison population hard. However, the Defendant gives the Court no reason to find that his chronic health conditions (i.e., ones from which the defendant is not expected to recover) would "substantially diminish the ability… to provide self-care within the environment of a correctional facility." USSG § 1B1.13, cmt. n.1(A)(ii)(I). The Government proffers Defendant's medical records from FCI Big Springs for the years 2017 through 2020. Doc. 211, Ex. 1, 2, 3 & 4. Defendant is classified as a care level 1 inmate on BOP's 4 level medical classification scale, which means he is considered generally healthy and his limited medical needs can be easily managed by a clinician at his facility. *See* Ex. 5 (BOP's clinical guidance regarding care level classification of inmates). Moreover, neither Defendant's motion nor his medical records indicate underlying health conditions that would elevate his risk of becoming seriously ill or developing major complications from COVID-19. *See* Centers for Disease Control, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Oct. 16, 2020) (last visited Oct. 21, 2020). Additionally, the Court cannot conclude that the presence of COVID-19 at the FCI Big Springs facility, without more, would substantially diminish Defendant's ability to care for himself. Many courts have denied prisoners' motions for compassionate release even when there are significant numbers of active COVID-19 cases at their facilities and even when the prisoners have serious pre-existing medical conditions. *See e.g.,*

*United States v. Williams*, 2020 WL 3316004, at *2 (D. Colo. June 18, 2020) (denying motion for compassionate release where there were 47 active cases of COVID-19 at facility); *United States v. Korn,* 2020 WL 1808213, at *6 (W.D.N.Y. Apr. 9, 2020) (denying compassionate release where defendant suffered from a serious heart condition and his facility had confirmed cases); *see also United States v. Gileno*, 448 F. Supp. 3d 183, 188 (D. Conn. 2020) ("the Court cannot assume that the [BOP] will be unable to manage [an] outbreak."). The BOP has experience combatting infectious diseases and has developed and implemented a multi-point plan to battle COVID-19. Preparations began in January 2020 when the BOP instituted its Pandemic Influenza contingency plan, specifically modified to fight COVID-19. *See* "BOP COVID-19 Action Plan," https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Oct. 8, 2020) (last visited Oct. 19, 2020). This plan is based on guidance and directives from the World Health Organization, the Centers for Disease Control and Prevention, and other related agencies. *Id.* Under this plan, the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, limited group gatherings, employed screening procedures, and suspended visitation and tours. *Id.* These and other measures are constantly reassessed to further mitigate the exposure and spread of COVID-19 among the federal prison population. *Id.*

Because Defendant is generally healthy and cannot show any medical condition or circumstance that would meet the Sentencing Commission's criteria, the Court cannot identify any "extraordinary and compelling reason" warranting a sentence reduction under § 3582(c)(1)(A).

C. Community Safety and Other Relevant Considerations

Although it has grounds to deny Defendant's motion due to a lack of "extraordinary and compelling reasons," the Court will still address community safety and other relevant considerations. Under the Sentencing Commission's policy statement, this Court must deny a

sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2).

On September 5, 2012, Defendant was charged in an indictment with three counts relating to production of child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e). Doc. 15. On January 27, 2014, a jury returned a guilty verdict on all three counts. Doc. 146. Defendant was sentenced to a term of 360 months as to all three counts, to run concurrently. Doc. 166. Because Defendant is still more than fifteen years away from his projected release date, he has not yet been evaluated by the BOP to determine whether he is a sexually dangerous person subject to civil commitment pursuant 18 U.S.C. § 4248, which usually occurs within eighteen to twenty-four months of an individual's projected release date. *See* BOP Program Statement 5394.01, Certification and Civil Commitment of Sexually Dangerous Persons at 6 (Feb. 1, 2016), found at ttps://www.bop.gov/policy/progstat/5394.01.pdf.

Given the nature of his crimes, it is doubtful that Defendant would be able to persuade the Court that he would not be a danger to the community if he was released—even assuming he was able to show that his medical condition were serious enough to interfere with his ability to care for himself within the facility. Furthermore, Defendant's proposed release plan contemplates only home confinement, and this Court has no authority to order the BOP to release Defendant to this type of custody. It is well-settled law that a prisoner has no constitutional right to confinement in a particular place, including confinement at home. *See McKune v. Lile*, 536 U.S. 24, 39 (2002). The BOP retains complete discretion in determining where federal prisoners are housed. *See* 18 U.S.C. § 3621(b); *United States v. Miller*, 594 F.3d 1240, 1242 (10th Cir. 2010) (citing *Moresco v. United States*, No. 92-1108, 1992 WL 372399, at *2 (10th Cir. Dec. 10, 1992) (unpublished)). Here, Defendant does not cite any particular statutory basis for release to home confinement;

however, the Court construes his request under 18 U.S.C. § 3624(c)(2), which authorizes the BOP

to place certain prisoners in home confinement.[4] The unambiguous language of §3624(c)(2),

however, as modified by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub.

L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020), specifies that only the BOP is statutorily

authorized to release prisoners to home confinement. *See United States v. Edwards*, No. 17-40093-

01-DDC, 2020 WL 2836991, at *1 (D. Kan. June 1, 2020). Defendant's request would alter only

the location of his incarceration, not its term. Accordingly, because the Court lacks authority to

designate the place of a prisoner's incarceration, the Court must deny Defendant's request for

release to home confinement.

These considerations, whether examined together or independently, support the Court's

finding that Defendant is not eligible for compassionate release.

## II.     The Federal Public Defender's Motion for Additional Time to Screen Defendant's case

Defendant has no constitutional right to counsel in pursuing his §3582 motion, although

the Court may appoint counsel in its discretion. *See Engberg v. Wyoming*, 265 F.3d 1109, 1121–

22 (10th Cir.2001); *United States v. Olden*, 296 F. App'x 671, 674 (10th Cir. 2008); *United States

v. Robinson*, 542 F.3d 1045, 1052 (5th Cir. 2008). The Court's Administrative Order allows the

FPD to file a limited motion requesting the appointment of counsel in a criminal case if the FPD

discerns that a defendant "may have a **nonfrivolous** claim for compassionate release.  Admin.

Order, 20-mc-00004, Doc. 30 at 2. The Administrative Order further requires a description of the

"extraordinary and compelling reasons" supporting the motion to appoint counsel.  *Id.*

The FPD's motion focuses exclusively on this case's exhaustion issue. Ms. Converse

---

[4] The Government notes that, under the BOP's current policy, Defendant is not a candidate for priority home placement consideration under the CARES Act due to his status as a sex offender. Doc 211 at 12.

asserts, "[t]he requested time will allow Mr. Gutierrez to obtain and provide copies of the warden request and the denial, and in the event of a timely denial, further exhaustion paperwork." Doc. 210 at 2. As discussed above, the Court is giving the benefit of the doubt to Defendant on the issue of exhaustion, rending the requested time extension unnecessary. Moreover, any future motion to appoint counsel in this case would be fruitless: the Court has found that "extraordinary and compelling reasons" do not exist here. Given the nature of this case, the Court has decided to exercise its discretion in denying the FPD's motion.

## CONCLUSION

**THEREFORE,** for the reasons explained above, the Court **DENIES** Defendant's motion for compassionate release and **DENIES** the FPD's motion for extension of time.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE