IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

     v.                                                    No. 12-CR-02222-WJ/KRS

ANTONIO GUTIERREZ,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION

**THIS MATTER** is before the Court on Defendant Antonio Gutierrez's *pro se* motion for reconsideration, filed January 29, 2021 (**Doc. 219**). Defendant requests that this Court reconsider its denial of counsel in this matter (Doc. 218) and its determination that the merits of Defendant's *pro se* motion for compassionate release did not warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and the First Steps Act of 2018, Pub. L. 115-391, 132 Stat. 5194 (Doc. 216). The Court finds that this Motion is not well-taken and is therefore DENIED.

### Background

In 2014, Defendant was found guilty of production of a visual depiction of a minor engaged in sexually explicit conduct and was sentenced to 360 months imprisonment. Doc. 166 at 1–2. Defendant is a 51-year-old inmate at FCI Big Springs, a facility operated by the Federal Bureau of Prisons. The Motion states that Defendant has over ten years left to serve on his sentence. Doc. 219 at 28. On September 30, 2020, Defendant filed a motion for compassionate release, and on October 9, 2020 he filed an amendment. Docs. 208 & 209. The United States responded to both filings on October 14, 2020. Doc. 211. The Court consolidated Defendant's motion and

1

amendment and denied his request for compassionate release on October 22, 2020. Doc. 216. The same day the Court issued its denial, the Federal Public Defender filed a motion to appoint counsel for Defendant. Doc. 214. This was quickly followed up by Defendant's *pro se* motion to appoint counsel. Doc. 216. On October 28, 2020, the Court denied both requests for appointment of counsel. Doc. 218. Defendant now moves the Court to reconsider its October 22nd and October 28th orders.

## Legal Standards

The Federal Rules of Criminal Procedure do not expressly provide for a motion to reconsider. Even so, in the criminal context, courts ordinarily apply the same standards that apply in civil cases. *See United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). The Court has discretion to reconsider a decision if the moving party can establish (1) an intervening change in the controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). A motion to reconsider is not a second opportunity for the losing party to make his strongest case, to rehash arguments or to dress up arguments that previously failed. *See Christy*, 739 F.3d at 539.

## Discussion

The standard imposed by *Servants of Paraclete* is fairly demanding, and Defendant must properly establish that his request for reconsideration falls within one of the categories listed above. However, as a *pro se* litigant, justice requires this Court to liberally construe his allegations and excuse instances of inartful drafting. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The Court will begin by examining the second *Servants of Paraclete* category. Defendant

states that much has changed since October of 2020, when the Court issued the relevant decisions. The Motion alerts the Court that in the interim months Defendant has contracted and recovered from COVID-19, and, consequently, he now suffers from constant chest pain and pressure, fatigue, nausea, dizziness, headaches, loss of smell and taste, and shortness of breath, bodily aches, coughing, and has difficulty sleeping. Doc. 216 at 4. The Motion also asserts that Defendant is now more vulnerable to reinfection, particularly since the last several months have seen a rise in new variants of the virus. *Id.* The Court will construe these interim changes as "new evidence" for the purpose of applying the *Servants of Paraclete* test.

Defendant's central argument appears to be that he is now more vulnerable to the COVID-19 virus because he could be reinfected or fall victim to one of the new strains of the virus. Apart from isolated instances of reinfection, some of which are cited by Defendant, the Centers for Disease Control and Prevention (the "CDC") maintains that "cases of reinfection with COVID-19 have been reported but remain rare." CDC, "Reinfection with COVID-19, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020) (last visited Feb. 4, 2021). The CDC is closely monitoring the emerging variants of the virus, but the agency has yet to conclude whether these mutations "cause the virus to act differently in ways that are significant to public health." CDC, "US COVID-19 Cases Caused by Variants," https://www.cdc.gov/coronavirus/2019-ncov/transmission/variant-cases.html (last updated Feb. 2, 2021) (last visited Feb. 4, 2021). Based on the current information, the Court would likely conclude that Defendant's risk for reinfection does not give rise to an extraordinary or compelling reason warranting a reduction in his sentence. *Cf. United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release). As for Defendant's new

ailments, the Court finds it telling that Defendant's thirty-page brief provides virtually no discussion or commentary on how his post-infection symptoms affect his ability to function or care for himself while imprisoned. Defendant describes how on January 2, 2021 he fell out his bunk and has yet to receive proper medical attention for his injured arm and shoulder. Defendant further states that he is still awaiting reassignment to a lower bunk. Doc. 219 at 21–22. However, this incident does not demonstrate any substantial development. Defendant is largely in the same position as when he filed his motions for compassionate release and appointment of counsel. Considered as a whole, the new evidence does not establish a basis for the Court to reconsider its prior decisions, as Defendant's new health complaints and anxieties about reinfection or availability of medical staff do not establish that Defendant is more vulnerable than when he filed his original motions. The Court, although sympathetic to Defendant's position, will not reconsider its prior decisions based on these factual developments because they are too speculative or fail to establish factual developments that could warrant compassionate release.

The Court will now address the first *Servants of Paraclete* category and Defendant's "intervening change in law" argument. The Court denied Defendant's motion for compassionate release based on 18 U.S.C. § 3582(c)(1)(A), which states in relevant part that, upon reviewing a defendant's motion for compassionate release, a court may modify a term of imprisonment only if, after considering the factors set forth in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

The "consistent with applicable policy statements" requirement has been interpreted by many district courts, including this Court, to mean that a defendant's circumstances must fit within the framework of U.S.S.G. § 1B1.13 as it is the applicable policy statement issued by the

4

Sentencing Commission (the "Commission"). *See e.g. United States v. Funez*, 2021 WL 168447, at *2 (D. Colo. Jan. 19, 2021); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). Congress directed the Commission to promulgate "general policy statements regarding. . .the appropriate use of. . . the sentence modification provisions set forth in [section] 3582(c) of title 18. . . ." 28 U.S.C. § 994(a)(2)(C). Congress further tasked the Commission with defining the phrase "extraordinary and compelling reasons," and § 994(t) specifically states:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

18 U.S.C. § 994(t). In *United States v. Lynn*, a district court reasoned that as long as this statutory mandate remains in place, the Commission possesses the authority to define what constitutes an extraordinary and compelling reason to provide relief, and the Commission's most recent policy continues to govern. 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019) ("By its terms, however, Section 994(a)(2)(C) leaves it to the Commission, not the judiciary, to determine what constitutes an appropriate use of [§ 3582(c)(1)(A)],"). Defendant argues that this Court is no longer bound by § 1B1.13 when determining whether extraordinary and compelling reasons exist because the First Step Act rendered this section inapplicable to motions filed by inmates. This argument highlights a growing trend in how federal courts interpret the First Step Act and its effect on § 3582(c). There exists an "emerging consensus" of district court opinions concluding that the First Step Act rendered § 1B1.13 inapplicable to defendant-initiated requests for compassionate release. *See United States v. Maumau*, 2020 WL 806121, at *3 (D. Utah Feb. 18, 2020) (gathering cases).

On September 25, 2020, the Second Circuit issued the *United States v. Brooker* opinion

5

and became the first appellate court to hold that the First Step Act freed district courts to exercise their discretion in determining what constitutes extraordinary circumstances. 976 F.3d 228, 234. To date, three other circuits have agreed with the reasoning contained in the *Brooker* opinion and issued similar holdings. *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. Nov. 20, 2020) (holding that § 1B1.13 does not apply to cases where an imprisoned person files a motion for compassionate release); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. Nov. 20, 2020) (determining that there is no current "applicable" policy statement covering prisoner-initiated applications for compassionate release) ; *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. Dec. 2, 2020) (district courts are "empowered ... to consider any extraordinary and compelling reason for release that a defendant might raise.") (quoting *Brooker*, 976 F.3d at 230). The Tenth Circuit has yet to address this issue, and it has continued to apply the § 1B1.13 in unpublished opinions analyzing motions under § 3582(c)(1)(A). As recently as January 5, 2021, the Tenth Circuit has stated that "Section 3582(c)(1)(A) allows a district court to grant a sentencing reduction if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Gieswein*, 832 Fed. Appx. 576, 577 (Mem.) (10th Cir. Jan. 5, 2021) (unpublished).[1] Moreover, at least one district court in this circuit has recently issued an opinion agreeing with the reasoning found in *Lynn* opinion and stating in a footnote that § 1B1.13 still governs. *See United States v. Funez,* 2021 WL 168447, at *2 n.1 (D. Colo. Jan. 19, 2021) (disagreeing with the defendant's argument that § 1B1.13 is not binding on the court); *see also United States v. Alonzo*, 2021 WL 327571, at *5 (E.D. Tex. Feb. 1, 2021) (concluding that "while the First Step Act expanded prisoners' access to the courts to file compassionate-release motions under section 3582(c)(1)(A),

---

[1] *Gieswein* is not binding precedent. However, the Court may use this decision for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

it did not alter the substantive standards governing these motions."). The Court concludes that it properly relied on § 1B1.13 and that, based on the Tenth Circuit's silence and continued application of § 1B1.13 in non-binding decisions, there has been no "intervening change in law."

Finally, the two conclusions above, and the reasoning upon which they are premised, are congruent with the Court's further conclusion that Defendant's motion does not implicate the final *Servants of Paraclete* category, "the need to prevent manifest injustice." 204 F.3d at 1012. Upon reviewing the record in light of the recent decisional law, the Court is convinced that even were it to follow *Brooker*, Defendant would obtain no relief because his case leads the Court to assume without deciding that its consideration of the § 3553(a) factors would also preclude compassionate release, notwithstanding the intervening factual or legal developments.

The first two § 3553(a) factors instruct the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed—to reflect the seriousness of the crime. . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(1)–(2). Whether the sentence imposed is needed to protect the public from further crimes of Defendant tracks § 1B1.13's mandate that a Court find he "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). The Court stated in its October 22nd Order denying Defendant's motion for compassionate release that "[g]iven the nature of his crimes, it is doubtful that Defendant would be able to persuade the Court that he would not be a danger to the community if he was released." Doc. 216 at 7. That determination would still stand if analyzed under § 3553(a)(2)(C) rather than § 1B1.13(2). The Court's duty to consider public safety is compounded by the fact that both the § 3553(a)(1) nature and circumstances of the offense and the history and characteristics of the defendant factor and the § 3553(a)(2)(A) need for the sentence imposed to reflect the seriousness of the offense would

likely preclude compassionate release despite Defendant's status as a first-time offender with a criminal history score of zero. Doc. 219 at 17.

Defendant was convicted by a jury of three counts of production of child pornography: a non-violent offense, yet one of the most serious federal offenses an individual can be charged with. The gravity of this offense is evidenced by Congress's imposition of a fifteen-year mandatory minimum sentence. *See* 18 U.S.C. § 2251(e). Additionally, when Congress passed the Adam Walsh Act in 2006, Congress made specific findings relating to the production of child pornography: "The illegal production . . . of child pornography . . . is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." Pub. L. No. 109-248, Title V, Section 501; *see also* S. Rep. 104-358 § 2 (1)(2) (1996) (Congress recognizing that the production of child pornography "is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved" since it creates a permanent record of the child's abuse, allowing for continued victimization of that child).

This Memorandum Opinion and Order will not recount the odious facts underlying Defendant's conviction, but they lead the Court to doubt that his otherwise clean record supports his assertion that the § 3553(a) factors weigh in favor of his release, especially when examined in light of Defendant's history of similar uncharged conduct. At trial the Court heard testimony regarding Defendant's uncharged sexual abuse, exploitation, and endangerment of family members. Under these circumstances, the Court finds no manifest injustice to cure through reconsideration of its prior decisions denying compassionate release and appointment of counsel.

## Conclusion

Having considered Defendant's "new evidence" and updated legal arguments and having

examined the record for signs of manifest injustice, the Court finds that Defendant has not established the conditions necessary for reconsideration. Therefore, for the reasons stated above, the Court hereby DENIES Defendant's Motion (Doc. 219).

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE